## BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES, etc., et al. v. NASHVILLE, C. & ST. L. RY.

### Civil Action No. 399.

District Court, M. D. Tennessee, Nashville Division.

Aug. 8, 1944.

Will R. Manier, Jr., of Nashville, Tenn., and Mulholland, Robie and McEwen, of Toledo, Ohio, for plaintiff.

Walker & Hooker, Wm. H. Swiggart, and Edwin F. Hunt, all of Nashville, Tenn., for defendant.

DAVIES, District Judge.

The above entitled cause came on for hearing before the Court on the 27th day of April, 1944.

The cause was submitted upon the pleadings, stipulation of facts, exhibits, and argument of counsel for plaintiff and defendant, and, after due consideration thereof, the Court enters its Findings of Fact and Conclusions of Law as follows:

### Findings

The facts are stipulated to be, and the Court finds that they are, as follows:

Plaintiff Brotherhood of Maintenance of Way Employees, hereinafter termed "Brotherhood," is an unincorporated association of employees performing certain services in the maintenance of way departments of various railroads of the United States, including section laborers, among which said employees are those employed in the Maintenance of Way Department of the defendant, The Nashville, Chattanooga & St. Louis Railway, hereinafter termed "Railway." Plaintiff Brotherhood is the duly and legally selected representative of said Maintenance of Way Department employees, who are employed by the Railway, for all of the purposes of the Railway Labor Act, a statute of the United States as amended June 21, 1934, and brings this action as such representative, and also as the petitioner in a certain dispute heretofore submitted to the National Railroad Adjustment Board, Third Division, the details of which will be more particularly set forth hereinafter. Said Brotherhood has its general offices and headquarters at 61 Putnam Avenue, Detroit, Michigan. Plaintiff E. E. Milliman is a resident and citizen of the City of Detroit, in the State of Michigan, and is the duly elected, qualified and acting President of the plaintiff Brotherhood. Plaintiff George H. Davis is a citizen and resident of the City of Covington in the State of Kentucky, and is the duly elected, qualified and acting General Chairman of Dixie Federation of the Brotherhood, which said Dixie Federation is a voluntary unincorporated association through which said Brotherhood carries on its activities and functions as the collective bargaining representative of the maintenance of way employees of the Railway.

The members of the Brotherhood, the employees in the Maintenance of Way Department of the Railway, and the other and additional persons in whose behalf this suit is brought, and who are not hereinabove specifically called by their names, are so numerous and their identity is so subject to fluctuation and change by death or otherwise that it would be practically impossible to make all of them parties by name, and it is impracticable to bring all of them before the court by name. All of the persons in whose behalf this suit is brought are or have been engaged in the same general class of employment for the same employer and form a general class of persons with a common and general interest in the subject matter of this suit. Plaintiff Brotherhood and the individual plaintiffs, E. E. Milliman and George H. Davis, fairly represent the rights and interests of those in whose behalf this suit is brought.

2. The defendant The Nashville, Chattanooga & St. Louis Railway is a corporation duly organized under and existing by virtue of the laws of the State of Tennessee and operates as a common carrier by railroad within the meaning of the Railway Labor Act as amended. The principal office of the Railway is located in the City of Nashville, Tennessee.

3. This is a civil action arising under the Constitution and laws of the United States, particularly under the Railway Labor Act as amended June 21, 1934, U.S.C.A. Title 45, Chapter 8, § 151 et seq., and this suit is instituted pursuant to the provisions of said Railway Labor Act.

4. For a number of years prior to November 1, 1940, the Brotherhood acted as the collective bargaining representative of the maintenance of way employees of the Railway under and by virtue of the terms of collective bargaining agreements which were from time to time modified and amended. On or about the 13th day of September, 1940, said Brotherhood and said Railway entered into a collective bargaining agreement effective as of November 1, 1940, which said agreement governed the rates of pay, rules and working conditions of the maintenance of way employees of the Railway which were represented by the Brotherhood. Said agreement insofar as it relates to any of the issues in this action is still in full force and effect.

Among the rules of said agreement are the following:

"Rule 43.—Houses

"Section and yard foremen, assistant foremen and section laborers will be permitted to occupy, without charge, houses provided by the railway for this purpose. Where no such houses are owned, the railway will rent, at its own expense, houses equal to its standard houses, in respectable localities, for section and yard foremen and assistant foremen with families."

"Rule 52.—Rates of Pay

"Rates of pay are as set forth in Appendix A to this agreement.

554

"Appendix 'A'

"Referred to in preceding Rule No. 52 General (Same on all Divisions).

| Classification | Rate | Remarks |
|---|---|---|
| * * * | * * * | * * * |
| Second Class Yard Section Laborers | .35¼ per hour | |
| Section Laborers, Line | .35¼ per hour" | |

"Rule 55.—Date Effective and Changes

"This agreement shall take effect as of November 1, 1940, superseding all former rules, and agreements, and shall continue in effect subject to thirty (30) days written notice by either party to the other. Such notice shall show the proposed changes and the handling shall be in accordance with the Railway Labor Act, as amended. * * *."

Either party hereto may refer to and rely upon any other provision of the said agreement at any stage of the proceeding by reading the same into the record.

5. The Fair Labor Standards Act, in Section 3(m) thereof, 29 U.S.C.A. § 203(m), contains a definition of "wage" as follows:

" 'Wage' paid to any employee includes the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees."

The Administrator of the Wage and Hour Division has determined reasonable cost under Section 3(m) of the Act by general regulations promulgated and published as Section 531.1 et seq. of the Appendix to Title 29 of the U.S.C.A., which regulations are incorporated herein by reference thereto the same as if duly introduced in evidence and proven.

Under date of February 12, 1941, the Administrator of the Wage and Hour Division, United States Department of Labor, under authority contained in Section 8 of a statute of the United States known as the Fair Labor Standards Act, U.S.C.A. Title 29, § 201 et seq., issued a wage order effective March 1, 1941, which said wage order contained, among other things, the following provision:

"Section 591.2(a). Wages at a rate of not less than 36 cents an hour shall be paid under Section 6 of the Act by every Employer to each of his employees in the trunk line division of the railroad carrier industry who is engaged in commerce or in the production of goods for commerce."

Either party hereto may refer to and rely upon any other rules, regulations or orders of the Administrator of the Wage and Hour Division and to that end may read and rely upon the same at any stage of the proceedings.

6. From and after the effective date of the agreement of November 1, 1940, referred to in Section 4 hereof, defendant Railway in accordance with Rule 43 of said agreement, permitted certain of its employees to occupy without charge houses provided by it.

Section laborers, one of the groups of employees permitted to occupy company-owned section houses, were free to accept or use such houses when they were available but were under no compulsion to do so.

The employees other than section laborers who were allowed to occupy company-owned houses were section and yard foremen and assistant foremen in the maintenance of way and structures department of the railway company.

From and after November 1, 1940, and for the period now involved, defendant Railway paid the foregoing employees cash wages as follows, whether or not they occupied railway-owned houses, which are the rates set forth in Appendix A to the said agreement of November 1, 1940:

| First Class Yard Section Foremen | $150.20 per month. |
|---|---|
| Second Class Yard Section Foremen | 140.20 per month. |
| Assistant First Class Yard Section Foremen | 49½ cents per hour. |
| Assistant Second Class Yard Section Foremen | 48¼ cents per hour. |
| Assistant Section Foremen Line | 48¼ cents per hour. |
| Section Laborers Line | 35¼ cents per hour. |

When the Administrator of the Wage and Hour Division on February 12, 1941, promulgated the regulation quoted in Section 5 hereof, defendant Railway determined the reasonable cost to it of section houses which were furnished to section laborers and found such cost to be the sum of Five and 94/100 Dollars ($5.94) per month for each double section house furnished or Two and 97/100 Dollars ($2.97) per month for each one-half such house. No determination was made by the Rail-

way company of the cost to it of houses furnished yard foremen and assistant foremen.

After March 1, 1941, and for the period now involved, defendant Railway continued to pay to the classes of employees listed above the same cash wages as above shown if they occupied railway owned houses and no deductions were made therefrom on account of the occupancy of such section houses.

With respect to section laborers (who were the only class of employees above listed whose cash wage was less than thirty-six (36) cents per hour) defendant Railway adopted the following procedure:

For those section laborers who occupied section houses, defendant Railway kept records showing that it paid such section laborers thirty-five and a quarter (35¼) cents per hour in cash, and in addition thereto, furnished them section houses at a cost to the railway of Five and 94/100 dollars ($5.94) per month for double houses, or two and 97/100 dollars ($2.97) per month for single houses, and that the aggregate of the cash wage and the cost to the railway of such section houses equalled or exceeded thirty-six (36) cents per hour per employee.

The records of defendant Railway are not kept in such manner as to show an hourly rate of pay in excess of thirty-six (36) cents per hour for those section laborers who occupy section houses, which rate of pay is based upon the number of hours worked and includes the cash wage and the cost of housing, but it is admitted by the parties that if the cost of housing may be properly included in determining the hourly rate for such employees, such rate would equal or exceed thirty-six (36) cents per hour.

Those section laborers who did not occupy railway-owned houses, whether because they did not desire such houses or because such houses were not available, were, subsequent to March 1, 1941, and for the period herein involved, paid a cash wage of thirty-six (36) cents per hour, as prescribed by the Fair Labor Standards Act.

Defendant Railway made no change in its records with respect to any employee whose cash wage equalled or exceeded thirty-six (36) cents per hour, and no change was made in the cash wage of any such employee.

During March, 1941, there were 598 section laborers employed by defendant Railway, of whom 233 occupied railway-owned section houses.

Defendant Railway has at no time reported to the Interstate Commerce Commission as a part of employee wages the cost to it of furnishing to its employees railway-owned section houses, such reports having been made on the basis of the cash or money wage.

Payment of overtime to employees who occupied company-owned houses is made in cash on the basis of time and one-half the minimum wage prescribed by the Fair Labor Standards Act, or time and one-half the contractual cash wage rate, whichever is the higher. Where the contractual cash wage rate is less than the minimum wage prescribed by the Fair Labor Standards Act, the Railway has paid overtime on the basis of the minimum wage prescribed by the Fair Labor Standards Act with the express statement that such payment was made without conceding that it could not properly compute overtime on the basis of time and one-half the contractual cash wage.

The cost to defendant Railway of furnishing company-owned houses is not included in the amount of wages from which deductions are made for the purposes of the Railroad Retirement Act, U.S.C.A. Title 45, § 228a, which provides that the term "compensation" means any form of money remuneration.

In 1932, an agreement was executed between defendant Railway and its employees providing "that ten (10) per cent shall be deducted from each pay check of each of the said employees covered by this agreement." Defendant Railway made the deductions from the pay checks without taking into consideration the cost to it of the section houses furnished.

Plaintiff admits the reasonableness of the cost of the section houses furnished as determined by defendant Railway, but objects to the inclusion of any such cost in the wage required to be paid.

7. A dispute arose between the Railway and its employees represented under the Railway Labor Act by the plaintiff Brotherhood as a result of the matters hereinabove outlined. Said dispute was handled with the representatives of the Railway and was thereafter carried in the usual manner up to and including the chief operating of-

ficer of the Railway designated to handle such disputes. No adjustment having been reached, the plaintiff Brotherhood acting in all respects as the representative of the section laborers of the Railway duly submitted said dispute to the National Railroad Adjustment Board, Third Division, on October 8, 1941.

8. The said National Railroad Adjustment Board is an administrative board organized under and pursuant to the terms of a statute of the United States known as the Railway Labor Act, originally enacted in 1926 and amended June 21, 1934. In particular, the said Board is organized under and pursuant to the provisions of Section 3 of that Act, U.S.C.A. Title 45, § 153. By virtue of the provisions of the said statute, the said Board is subdivided into four divisions, the Third Division having jurisdiction of disputes involving "station, tower, and telegraph employees, train dispatchers, maintenance-of-way men, clerical employees, freight handlers, express, station, and store employees, signal men, sleeping-car conductors, sleeping-car porters, and maids and dining-car employees." The dispute aforesaid was one coming within the statutory jurisdiction of the National Railroad Adjustment Board, Third Division, and was duly and properly referred and submitted to the said Division as above set forth.

9. The said National Railroad Adjustment Board, Third Division, duly accepted jurisdiction of the above dispute and entered the same upon its docket as Docket No. MW—1765. The said Division considered the dispute and thereafter on February 26, 1942, issued its Award No. 1726, sustaining the position of the Brotherhood. A copy of said Award is attached hereto, made a part hereof, and marked Exhibit A.

On the same day, the National Railroad Adjustment Board, Third Division, issued its order directing defendant Railway to make effective Award No. 1726 on or before May 1, 1942. A copy of said order is attached hereto, made a part hereof, and marked Exhibit B.

The Third Division of the said Board consists of ten members, five selected by and representing the employees and five selected by and representing the carriers. Said Third Division was evenly divided and unable to reach a conclusion after hearing and oral argument by both parties with respect to the matter submitted to it; and such Board being deadlocked, a referee was appointed in accordance with the provisions of the Railway Labor Act, as amended. The Board thus constituted, with the referee casting the deciding vote on the basis of the written submission of the parties made prior to the appointment of the referee, made the award sought to be enforced in this suit, without notice to the parties and without further hearing, other than the presentation to the referee by the other members of the Board of such statement of the controversy as they deemed sufficient.

The facts upon which such award was made are those hereinabove set forth.

10. Defendant has failed and refused to comply with the award of the National Railroad Adjustment Board, Third Division, as above set forth and has advised plaintiffs that it cannot agree to make said award effective. Representatives of defendant expressed to representatives of plaintiffs a willingness to have adjudicated and determined the legality and correctness of the award by a judicial proceeding to enforce the same pursuant to Section 3(p) of the Railway Labor Act, 45 U.S.C.A. § 153(p).

## Conclusions

■ 1. The primary question in this case is whether or not the Fair Labor Standards Act and the orders and regulations promulgated thereunder modified the contract entered into between the Railway and the Maintenance of Way Employees, which provided that the second class yard section laborers and line section laborers would receive compensation at the rate of 35¼¢ per hour. The minimum wage fixed in wage order issued under authority of the Fair Labor Standards Act was 36¢ per hour. The Court is of the opinion that the Act in question did modify the contract.

2. The contract was entered into as of November 1, 1940, and the wage order under the Fair Labor Standards Act became effective on March 1, 1941. After the Act became effective, the contract entered into by and between the parties to this case, which had been in effect since November 1, 1940, was illegal insofar as the amount of the stipulated wage is concerned. The Court is not only of the opinion that the passage of the Act modified the contract, but that the parties to the contract so recognized the modification, for, immediately upon the Act becoming effective, the Rail-

way proceeded to raise the rate of pay from 35¼¢ per hour to 36¢ per hour to those employees who were not furnished houses. As to those employees who were furnished houses, the Railway, in accordance with the terms of the Act, determined the reasonable cost of the houses furnished, which amounted to more per day than the difference between 35¼¢ and 36¢ per hour on a day basis, and, for this reason, the Railway contended it was not required under the terms of the contract as modified by the Act to increase the contract wage rate of those employees who were furnished housing facilities, and that action cannot be termed arbitrary in any manner in view of the terms of the statute.

3. Having arrived at the conclusion that the statute itself, of course, meaning the Fair Labor Standards Act, modified the terms of the contract as to the rate of pay per hour, the Court is of the opinion that if it modified it in one respect, it modified it in all respects as to any terms and provisions of the contract that might be in conflict with the terms and provisions of the Act. Certainly, neither the Railway nor the employees could say that they would accept the beneficial provisions of the Act and reject the provisions they did not deem to be beneficial. If the Act modified the contract in one respect, of course, it modified it in all respects wherein the contract is in conflict with the terms and provisions of the Act.

4. Section 3(m) of the statute provides that wages paid any employee includes reasonable cost, as determined by the Administrator, to the employer, of furnishing such employee with board, lodging or other facilities if such board, lodging or other facilities are customarily furnished by such employer to his employees.

The Railway contends that as to maintenance of way employees and section hands, it was customary to furnish houses and under the authority of the section of the statute above referred to, it is entitled to compute the reasonable cost of the housing and to consider that as partial payment of the wages, and, by determination of the Administrator, the cost of furnishing the housing amounts to considerably more than the difference per hour between 35¼¢ and 36¢. That fact is not in controversy. It is stipulated by the parties that it would bring the basic pay of these employees who are furnished housing to more than 36¢ per hour.

Of course, if the Act amends or modifies the contract so as to raise the wage rate from 35¼¢ per hour to 36¢ per hour, it would follow that any definition of wages, as incorporated in the Act, would be equally as effective as another provision of the Act increasing the wage rate from 35¼¢ to 36¢ per hour.

5. That brings the Court to the question of the consideration of language in the Act as to what is meant by "customarily furnished by such employer to his employees." The Court construes the language contained in Section 3(m) of the Act—"customarily furnished by such employer to his employees"—as meaning customarily furnished as part of the wages. In this particular contract in question, under Appendix "A," setting out the different classifications of labor, it will be noted that in some classifications, such as B&B Foremen, the compensation or wage is fixed at $170.20 per month, "plus board." In other classifications, the rate of pay or wage, for instance, Assistant B&B Foremen, is fixed at $152.20 per month without any additional benefits such as board or housing. Other classifications, such as B&B mechanic, is fixed at 57¢ per hour, and others fixed upon an hourly basis. In some classifications, for instance, cooks in construction department, the wage is fixed at $2.74 per day, "plus board." As to the particular classification in question in this case, second class yard section laborers and line section laborers, the rate of compensation is fixed at 35¼¢ per hour without any additional benefits of housing, board, or anything else.

It also appears from the stipulation that of 598 section employees, only 233 employees were provided houses, for which no charge was made. Under the contract they received the same wage rate as those employees who were not furnished houses. That situation existed under the contract before the passage of the Fair Labor Standards Act. The Railway provided housing for 233 of their section hands and no rental charge was made for the houses. After the passage of the Fair Labor Standards Act, the Railway sought to have computed the reasonable cost of the housing, so as to have same considered part of the wage.

6. Under the circumstances, and in the light of the construction of the statute, the Court is unable to say that the Rail-

558

way customarily furnished its section laborers houses as part of the wage because no rental charge was ever fixed for the houses. I assume that this situation came about by reason of the fact that the railroad, being divided into sections with each section presided over by a section foreman who had under him a special group of laborers who worked on that particular section, had a number of these sections located in remote parts of the country and the Railway had difficulty in getting employees to go there and work because there were no housing facilities. Therefore, the practice and custom developed in the Railway providing houses for their employees, but they were free to live in those houses, or not, as they wished. There was no requirement by the Railway that their employees on remote sections should live in the houses furnished, and the contract itself takes cognizance of that situation because it expressly states as follows in Rule 43: "Section and yard foremen, assistant foremen, and laborers will be permitted to occupy without charge houses provided by the Railway for this purpose." There was no obligation on the Railway to furnish the houses and no obligation on the employees to occupy them. They could if they wished, and if they did, no charge was made therefor.

7. The Court is of the opinion that there is no obligation in the contract, either before or after the passage of the statute, that would create any obligation on the Railway to provide such housing or on the section laborers and foremen to occupy them.

Counsel for the Railway in this case admit that if it had sought to charge employees for the occupancy of the houses before the passage of the statute, it would have violated the terms of the contract. I think that is correct. It was never anticipated under the contract that there would be any charge for the houses and it was not considered that the houses were customarily furnished as a part of the wage or pay, and the Court is of the opinion that the

same situation would be in effect after the passage of the Act. Therefore, the fact that the houses were not customarily furnished as part of the wage before the passage of the statute cannot, since the passage thereof, be claimed by the Railway as part of the reasonable cost under the statute of furnishing the employees board, lodging or other facilities, because houses had never been customarily furnished as a part of the wage.

8. The purpose of the Fair Labor Standards Act was to fix a minimum wage for all employees and to allow the Railway to charge reasonable cost for housing facilities as part of the wage where no housing facilities were customarily furnished as such under the contract before the passage of the Act, and where houses were not furnished to all employees of the same class would, in the opinion of this Court, defeat the purpose of the statute.

9. To permit such action would, in the opinion of the Court, also contravene the terms of the contract in question. While the contract, as modified by the statute, is subject to the definition of wages, as contained in the statute, yet, in view of the construction placed upon the statute by this Court, in defining the words "customarily furnished" as meaning "customarily furnished as part of the wage", the Railway, not having customarily furnished housing as part of the wage under the contract before the passage of the Act, could not under the terms of the contract claim credit for housing furnished after passage of the Act.

The Court is of opinion that under the facts of this particular case the Railway, or the defendant, is not entitled to claim allowance for the reasonable cost of the housing furnished certain of its section employees as part of the 36¢ per hour minimum wage provided by the statute, and, therefore, the award of the Railroad Adjustment Board in this case should be enforced.

Judgment will be entered accordingly.