**BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES et al. v. NASH-VILLE, C. & ST. L. RY.**

Civil Action No. 400.

District Court, M. D. Tennessee, Nashville Division.

Aug. 14, 1944.

Will R. Manier, Jr., of Nashville, Tenn., and Mulholland, Robie & McEwen, of Toledo, Ohio, for plaintiff.

Walker & Hooker, Wm. H. Swiggart, and Edwin F. Hunt, all of Nashville, Tenn., for defendant.

DAVIES, District Judge.

The cause was submitted upon the pleadings, stipulation of facts, exhibits, and argument of counsel for plaintiff and defendant, and, after due consideration thereof, the Court enters its Findings of Fact and Conclusions of Law as follows:

### Findings

The facts are stipulated to be, and the Court finds that they are as follows:

Plaintiff Brotherhood of Maintenance of Way Employees, hereinafter termed "Brotherhood," is an unincorporated association of employees performing certain services in the maintenance of way departments of various railroads of the United States, in-

cluding extra gang laborers, among which said employees are those employed in the Maintenance of Way Department of the defendant, The Nashville, Chattanooga & St. Louis Railway, hereinafter termed "Railway." Plaintiff Brotherhood is the duly and legally selected representative of said Maintenance of Way Department employees, who are employed by the Railway for all of the purposes of the Railway Labor Act, a statute of the United States as amended June 21, 1934, and brings this action as such representative, and also as the petitioner in a certain dispute heretofore submitted to the National Railroad Adjustment Board, Third Division, the details of which will be more particularly set forth hereinafter. Said Brotherhood has its general offices and headquarters at 61 Putnam Avenue, Detroit, Michigan. Plaintiff, E. E. Milliman, is a resident and citizen of the City of Detroit, in the State of Michigan, and is the duly elected, qualified and acting President of the plaintiff Brotherhood. Plaintiff George H. Davis is a citizen and resident of the City of Covington in the State of Kentucky, and is the duly elected, qualified and acting General Chairman of Dixie Federation of the Brotherhood, which said Dixie Federation is a voluntary unincorporated association through which said Brotherhood carries on its activities and functions as the collective bargaining representative of the maintenance of way employees of the Railway.

The members of the Brotherhood, the employees in the Maintenance of Way Department of the Railway, and the other and additional persons in whose behalf this suit is brought, and who are not hereinabove specifically called by their names, are so numerous and their identity is so subject to fluctuation and change by death or otherwise that it would be practically impossible to make all of them parties by name, and it is impracticable to bring all of them before the court by name. All of the persons in whose behalf this suit is brought are or have been engaged in the same general class of employment for the same employer and form a general class of persons with a common and general interest in the subject matter of this suit. Plaintiff Brotherhood and the individual plaintiffs, E. E. Milliman and George H. Davis, fairly represent the rights and interests of those in whose behalf this suit is brought.

2. The defendant The Nashville, Chattanooga & St. Louis Railway is a corporation duly organized under and existing by virtue of the laws of the State of Tennessee and operates as a common carrier by railroad within the meaning of the Railway Labor Act as amended. The principal office of the Railway is located in the City of Nashville, Tennessee.

3. This is a civil action arising under the Constitution and laws of the United States, particularly under the Railway Labor Act as amended June 21, 1934, U.S.C.A. Title 45, Chapter 8, Sections 151 et seq., and this suit is instituted pursuant to the provisions of said Railway Labor Act.

4. For a number of years prior to November 1, 1940, the Brotherhood acted as the collective bargaining representative of the maintenance of way employees of the Railway under and by virtue of the terms of collective bargaining agreements which were from time to time modified and amended. On or about the 13th day of September, 1940, said Brotherhood and said Railway entered into a collective bargaining agreement effective as of November 1, 1940, which said agreement governed the rates of pay, rules and working conditions of the maintenance of way employees of the Railway which were represented by the Brotherhood. Said agreement insofar as it relates to any of the issues in this section is still in full force and effect.

Among the rules of said agreement are the following:

"Rule 52.—Rates of Pay

Rates of pay are as set forth in Appendix A to this agreement.

Appendix 'A'

Referred to in preceding Rule No. 52
General (Same on all Divisions).

| Classification | Rate | Remarks |
|---|---|---|
| * * * | * * * | * * * |
| Extra Gang Laborers | .33 per hour— plus board. | |

Rule 55.—Date Effective and Changes

This agreement shall take effect as of November 1, 1940, superseding all former rules, and agreements, and shall continue in effect subject to thirty (30) days written notice by either party to the other. Such notice shall show the proposed changes and the handling shall be in accordance with the Railway Labor Act, as amended."

Either party hereto may refer to and rely upon any other provision of the said agreement at any stage of the proceeding by reading the same into the record.

The Fair Labor Standards Act, in Section 3(m) thereof, 29 U.S.C.A. § 203(m), contains a definition of "wage" as follows:

" 'Wage' paid to any employee includes the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees."

The Administrator of the Wage and Hour Division has determined reasonable cost under Section 3(m) of the Act by general regulations promulgated and published as Section 531.1 et seq. of the Appendix to Title 29 of the U.S.Code, which regulations are incorporated herein by reference thereto the same as if duly introduced in evidence and proven.

Under date of February 12, 1941, the Administrator of the Wage and Hour Division, United States Department of Labor, under authority contained in Section 8 of a statute of the United States known as the Fair Labor Standards Act, U.S.C.A. Title 29, § 201 et seq., issued a wage order effective March 1, 1941, which said wage order contained, among other things, the following provision:

"Section 591.2(a). Wages at a rate of not less than 36 cents an hour shall be paid under Section 6 of the Act by every employer to each of his employees in the trunk line division of the railroad carrier industry who is engaged in commerce or in the production of goods for commerce."

Either party may refer to and rely upon any other rules, regulations or orders of the Administrator of the Wage and Hour Division and to that end may read and rely upon the same at any stage of the proceedings.

From and after the effective date of the Agreement of November 1, 1940, referred to in section 4 hereof, defendant Railway furnished board to certain of its employees, including extra gang laborers. The employees of the Railway other than extra gang laborers who received board were extra gang foremen, assistant extra gang foremen, B. & B. foremen and cooks.

From and after November 1, 1940, defendant Railway paid the foregoing employees cash wages as follows, which are the rates set forth in Appendix A to the said agreement of November 1, 1940:

### On All Divisions

| | |
|---|---|
| B. & B. Foremen | $170.20 per month |
| Extra Gang Foremen | 146.20 per month |
| Extra Gang Laborers | 33¢ per hour |

### Construction Sub Dept.

| | |
|---|---|
| Cooks | $2.74 per day |
| Assistant Cooks | 2.16 per day |

### Chattanooga Division

| | |
|---|---|
| Assistant Extra Gang Foremen | $114.44 per month |
| M. W. Cooks | 2.81 per day |

### Atlanta Division

| | |
|---|---|
| Assistant Extra Gang Foremen | $113.94 per month |
| M. W. Cooks | 2.82 per day |

### P. & M. Division

| | |
|---|---|
| Assistant Extra Gang Foremen | 48¢ per hour |
| M. W. Cooks | $2.74 per day |

### Nashville Division

| | |
|---|---|
| Assistant Extra Gang Foremen | $113.94 per month |
| B. & B. Cooks | 2.74 per day |
| Extra Gang Cooks | 2.82 per day |

### Huntsville Division

| | |
|---|---|
| Assistant Extra Gang Foremen | $109.96 per month |
| B. & B. Cooks | 2.74 per day |
| Extra Gang Cooks | 2.82 per day |

When the Administrator of the Wage and Hour Division, on February 12, 1941, promulgated the regulation quoted in section 5 hereof, defendant Railway determined the reasonable cost of the board furnished the extra gang laborers above referred to to be 33 cents or more per day.

After March 1, 1941, and for the period now involved, defendant Railway continued to pay to the classes of employees listed above the same cash wage as it had previously paid, and no deductions were made from such cash wages for the cost to defendant Railway of the board it furnished such employees.

With respect to the extra gang laborers (who received a cash wage less than thirty-six cents per hour) defendant Railway kept records showing that it paid said extra gang laborers thirty-three cents per hour in cash and in addition thereto, furnished them

board at a cost of thirty-three cents or more per day and that the aggregate of cash wage and the cost of the board equalled or exceeded thirty-six cents per hour.

The records of defendant Railway are not kept in such manner as to show an hourly rate of pay in excess of thirty-six (36) cents per hour for the above listed employees based upon the number of hours worked and including the cash wage plus the cost of board, but it is admitted by the parties that if the cost of board may be properly included in determining the hourly rate for such employees, such rate would equal or exceed thirty-six cents per hour.

Defendant Railway had made no change in its records with respect to any of the above listed employees whose cash wage equalled or exceeded thirty-six cents per hour.

Defendant Railway has at no time reported to the Interstate Commerce Commission as a part of employee wages the cost to it of furnishing to its employees board, such reports having been made on the basis of the cash or money wage.

Payment for overtime to employees who received board is made in cash on the basis of time and one-half the minimum wage prescribed by the Fair Labor Standards Act, or time and one-half the contractual cash wage rate, whichever is the higher. Where the contractual cash wage rate is less than the minimum wage prescribed by the Fair Labor Standards Act, defendant Railway has paid overtime on the basis of the minimum wage prescribed by the Fair Labor Standards Act with the express statement that such payment was made without conceding that it could not properly compute overtime on the basis of time and one-half the contractual cash wage.

The cost to defendant Railway of furnishing board is not included in the amount of wages from which deductions are made for the purposes of the Railroad Retirement Act, U.S.C.A. Title 45, § 228a, which provides that the term "compensation" means any form of money remuneration.

The cost to defendant Railway of furnishing board is not included in the amount of wages from which deductions are made for the purposes of the Carriers' Taxing Act, U.S.C.A. Title 45, § 261, which provides that the term "compensation" means any form of money remuneration.

In 1932, an agreement was executed between defendant Railway and its employees providing "that ten (10) per cent shall be deducted from each pay check of each of the said employees covered by this agreement." Defendant Railway made the deductions from the pay checks without taking into consideration the cost to it of the board furnished.

Plaintiff admits the reasonableness of the cost of the board furnished as determined by defendant Railway, but objects to the inclusion of any such cost in the wage required to be paid.

7. A dispute arose between the Railway and its employees represented under the Railway Labor Act by the plaintiff Brotherhood as a result of the matters hereinabove outlined. Said dispute was handled with the representatives of the Railway and was thereafter carried in the usual manner up to and including the chief operating officer of the Railway designated to handle such disputes. No adjustment having been reached, the plaintiff Brotherhood acting in all respects as the representative of the extra gang laborers of the Railway duly submitted said dispute to the National Railroad Adjustment Board, Third Division, on October 8, 1941.

8. The said National Railroad Adjustment Board is an administrative Board organized under and pursuant to the terms of a statute of the United States known as the Railway Labor Act, originally enacted in 1926 and amended June 21, 1934. In particular, the said Board is organized under and pursuant to the provisions of Section 3 of that Act, U.S.C.A. Title 45 Section 153. By virtue of the provisions of said statute, the said Board is subdivided into four divisions, the Third Division having jurisdiction of disputes involving "station, tower, and telegraph employees, train dispatchers, maintenance-of-way men, clerical employees, freight handlers, express, station, and store employees, signal men, sleeping-car conductors, sleeping-car porters, and maids and dining-car employees." The dispute aforesaid was one coming within the statutory jurisdiction of the National Railroad Adjustment Board, Third Division, and was duly and properly referred and submitted to the said Division as above set forth.

9. The said National Railroad Adjustment Board, Third Division, duly accepted

jurisdiction of the above dispute and entered the same upon its docket as Docket No. MW–1766. The said Division considered the dispute and thereafter on February 26, 1942, issued its Award No. 1727, sustaining the position of the Brotherhood. A copy of said Award is attached hereto, made a part hereof, and marked Exhibit A.

On the same day, the National Railroad Adjustment Board, Third Division, issued its order directing defendant Railway to make effective Award No. 1727 on or before May 1, 1942.

The Third Division of the said Board consists of ten members, five selected by and representing the employees and five selected by and representing the carriers. Said Third Division was evenly divided and unable to reach a conclusion after hearing and oral argument with respect to the matter submitted to it; and such Board being deadlocked, a referee was appointed in accordance with the provisions of the Railway Labor Act as amended. The Board thus constituted, with the referee casting the deciding vote on the basis of the written submission of the parties made prior to the appointment of the referee, made the award sought to be enforced in this suit without notice to the parties and without further hearing other than the presentation to the referee by the other members of the Board of such statement of the controversy as they deemed sufficient.

The facts upon which such award was made are those hereinabove set forth.

10. Defendant has failed and refused to comply with the award of the National Railroad Adjustment Board, Third Division, as above set forth and has advised plaintiffs that it cannot agree to make said award effective. Representatives of defendant expressed to representatives of plaintiffs a willingness to have adjudicated and determined the legality and correctness of the award by a judicial proceeding to enforce the same pursuant to Section 3(p) of the Railway Labor Act, 45 U.S.C.A. § 153(p).

## Conclusions

■ 1. The primary question in this case is whether or not the Fair Labor Standards Act and the orders and regulations promulgated thereunder modified the contract entered into between the Railway and the Maintenance of Way Employees, which provided that extra gang laborers would receive compensation at the rate of 33¢ per hour, "plus board." The minimum wage fixed in wage order issued under authority of the Fair Labor Standards Act was 36¢ per hour. The Court is of the opinion that the Act in question did modify the contract.

■ 2. The contract was entered into as of November 1, 1940, and the wage order under the Fair Labor Standards Act became effective on March 1, 1941. After the Act became effective, the contract entered into by and between the parties to this case, which had been in effect since November 1, 1940, was illegal insofar as the amount of the stipulated wage is concerned.

3. Having arrived at the conclusion that the statute itself, of course, meaning the Fair Labor Standards Act, modified the terms of the contract as to the rate of pay per hour, the Court is of the opinion that if it modified it in one respect, it modified it in all respects as to any terms and provisions of the contract that might be in conflict with the terms and provisions of the Act. Certainly, neither the Railway nor the employees could say that they would accept the beneficial provisions of the Act and reject the provisions they did not deem to be beneficial. If the Act modified the contract in one respect, of course, it modified it in all respects wherein the contract is in conflict with the terms and provisions of the Act.

4. Section 3(m) of the statute provides that wages paid any employee includes reasonable cost, as determined by the Administrator, to the employer, of furnishing such employee with board, lodging or other facilities if such board, lodging or other facilities are customarily furnished by such employer to his employees.

The Railway contends that as to extra gang laborers, it was customary to furnish board in addition to the regular wage rate and, under the authority of the section of the statute above referred to, it is entitled to compute the reasonable cost of said board and to consider that as partial payment of the wages required by the statute and wage orders, and, by determination of the Administrator, the cost of furnishing board to said laborers amounts to considerably more than the difference per hour between 33¢ and 36¢. That fact is not in controversy. It is stipulated by the parties that it

would bring the basic pay of these employees who are furnished board to more than 36¢ per hour.

Of course, if the Act amends or modifies the contract so as to raise the wage rate from 33¢ per hour to 36¢ per hour, it would follow that any definition of wages, as incorporated in the Act, would be equally as effective as another provision of the Act increasing the wage rate from 33¢ to 36¢ per hour.

5. That brings the Court to the question of the consideration of the language in the Act as to what is meant by "customarily furnished by such employer to his employees." The Court construes the language contained in Section 3(m) of the Act—"customarily furnished by such employer to his employees"—as meaning customarily furnished as part of the wages. In this particular contract in question, under Appendix "A," setting out the different classifications of labor, it will be noted that in some classifications, such as B & B Foremen, the compensation or wage is fixed at $170.20 per month, "plus board." In other classifications, the rate of pay or wage, for instance, Assistant B & B Foremen, is fixed at $152.20 per month without any additional benefits such as board or housing. Other classifications, such as B & B mechanic, is fixed at 57¢ per hour, and others fixed upon an hourly basis. In some classifications, for instance, cooks in construction department, the wage is fixed at $2.74 per day, "plus board". As to the particular classification in question in this case, extra gang laborers, the rate of compensation is fixed at 33¢ per hour, plus board.

6. The Court is of the opinion that under the terms of the contract in question, the Railway is obligated to furnish board to said extra gang laborers, and that said board was customarily furnished as part of the basic wage before the passage of the Act and since the passage thereof, and, therefore, the Railway is entitled, under the contract in question, and under the terms and provisions of the Act as construed by the Court, to claim an allowance for the reasonable cost of furnishing said board to said laborers; and said cost having been established and determined by the Administrator to amount to more than the difference between 33¢ per hour and 36¢ per hour, the Railway is entirely within its rights in declining to recognize the validity of the award made by the Railroad Adjustment Board in this case, and said award should not be enforced by orders of this Court; and that the bill filed in this case should be dismissed.

Judgment will be entered accordingly.