**SOUTHERN PAC. CO. v. JOINT COUNCIL
DINING CAR EMPLOYEES, LOCALS
456 AND 582.**

No. 11566.

Circuit Court of Appeals, Ninth Circuit.

Dec. 9, 1947.

Writ of Certiorari Denied Feb. 16, 1948.

See 68 S.Ct. 608.

ORR, Circuit Judge, dissenting.

Burton Mason, A. G. Goodrich and E. L. Van Dellen, all of San Francisco, Cal., for appellant.

George M. Naus, of San Francisco, Cal., and Clifton Hildebrand, of Oakland, Cal., for appellee.

Before DENMAN, BONE and ORR, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from a judgment of the district court enforcing an award of the Third Division of the National Railroad Adjustment Board, hereinafter called the Board. The judgment gave damages for the admitted cost of meals furnished by appellant, hereinafter called Railway, to its dining car waiters, hereinafter called Waiters, holding that such meals are not a part of their wages within Section 3(m), of the Fair Labor Standards Act, 29 U.S.C.A. § 203(m), hereafter called the Act.

Its holding is against the Railway's contention there and here made that, in determining whether the Railway had paid the Waiters the 36¢ per hour minimum required by a wage order of the Administrator of that Act,[1] the admitted cost of the meals is to be added to the lesser cash wage paid of 32½¢. A later wage order made the minimum 40¢ per hour. The parties agree that if the admitted cost of the meals be included in the wages, both wage orders will be complied with and the judgment must be reversed.

Section 3(m) provides " 'Wage' paid to any employee includes the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees."
and the regulation thereunder, as follows:

"§ 521.1. Reasonable cost under section 3(m) of the Act. The term 'reasonable cost' in section 3(m) of the act is hereby determined to be not more than the actual cost to the employer of the board, lodging, or other facilities customarily furnished by him to his employees.

"(a) Reasonable cost does not include a profit to the employer or to any affiliated person. * * *

"(d) The cost of furnishing 'facilities' which are primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages."

The district court found "Continuously since the year 1936 there has been in effect between petitioner and respondent an agreement concerning rates of pay, rules and working conditions of said craft or class of dining car waiters, whereby and whereunder as one of said working conditions meals were to be supplied in the dining cars of respondent to the members of said craft or class, without cost or charge to them, while on itinerant duty in said cars in the course of their employment, and primarily for the benefit and convenience of respondent."

Appellant here claims that the evidence does not sustain the Waiters' burden of proof that the meals were "primarily for the benefit or convenience of the respondent" below, the Railway, and that eating them, on the Waiters' own time, is not a working condition.

The litigation began in a grievance dispute between the Railway and the Waiters under Section 3, 45 U.S.C.A. § 153, of the Railway Labor Act before the Third Division of the National Railway Adjustment Board.[2] The Railway there contended that no contract existed between it and the Waiters to furnish such meals and hence there was nothing over which the Board had jurisdiction. It also contended that if they were a part of the contract they fell clearly within Section 3(m) and were a part of the wages. The Waiters there contended that "It [*the furnishing of meals*] was

---

[1] Acting under Section 8 of the Act, 29 U.S.C.A. § 208.

[2] Section 3, subd. First, subsection (i), limits the jurisdiction of the Adjustment Board to disputes over the interpretation and application of contracts between carriers and their employees. Elgin, J. & E. R. Co. v. Burley, 325 U. S. 711, 723–726, 65 S.Ct. 1282, 89 L.Ed. 1886.

*part of the price these managements were willing to pay to insure the desired service,"[3]* and that this price was an implied part of the contract which had existed between the parties since at least 1932.

The Division held "that the carrier is under a contractual obligation to furnish free meals under the circumstances of this case, and that this service is not a mere gratuity or one that may be charged for at will". The Railway has since accepted this decision and its contention is that because so agreed to be furnished to the Waiters as part of the admitted price paid for their services, the meals are necessarily a part of the wages. Merely because there was a contract to furnish the meals, the Division stated its conclusion of law "That the carrier violated the effective agreement by charging the claimant for meals as alleged in the claim".

In arriving at this conclusion of law, the Division refused to consider whether the meals for many years so customarily furnished were under 3(m) of the Act, and applicable Regulation 531.1(d), "facilities which are primarily for the benefit or convenience of the employer" and hence their cost not to be added to the cash wage in determining whether the minimum wage had been paid. It held that it would do no more than determine whether the furnishing of the meals was a part of the contract and leave to the courts the effect on the contract of Section 3(m) of the Act, stating "From its inception this Board has consistently held that its functions are limited to interpreting and applying the rules agreed upon by the parties. Having concluded that the parties before us had an effective agreement that obligated the carrier to provide the claimant with free meals under the circumstances and during the period in controversy we have, therefore, fully discharged our duty in the premises. It has not been suggested that the Fair Labor Standards Act has ever been construed as forbidding carriers from contracting to furnish free meals to their employees. The wages to which the claimant is entitled is a

matter of law, rather than of contract. Section 16[b] of the act contains appropriate provisions for *its* [the law's] enforcement, but this is not the responsibility of this Board. To say more would merely becloud the issue."

The case thus came to the district court without any findings on the sole contention there presented, i. e., Was the cost of the meals so contracted to be furnished not to be added to the cash wage in determining the minimum wage? That is to say, no question here exists concerning prima facie value of any finding of the Division under 45 U.S.C.A. § 153 subd. 1(p), providing that "the findings and order of the division * * * shall be prima facie evidence of the facts therein stated."

■ A. *The eating, on the Waiters' own time, of meals furnished as a part of the "price" for their working at all, is not a "working condition."* If it were, it nevertheless is a part of the wage or price.

The Waiters argue (and the district court found) that, though the cost of the meals is a part of the price to secure the Waiters' services, it is not to be added to the cash paid because such meals are a part of the Waiters' working conditions. They would have added to Section 3(m) of the Act the words "except when such board is furnished as a part of the employees' working conditions." That section would then read "Wage" includes the reasonable cost to the employer of furnishing such employee with board, if such board is customarily furnished by such employer to his employees, [except when such board is furnished as a part of the employees' working conditions].

■ We can find no reason so to construe the plain meaning of the Fair Labor Standards Act against the employer even if it were not a penal statute with its Section 16(a) providing imprisonment of the employer for its violation. The only exception to Section 3(m) is that of Regulation 531.1(d) respecting the "primarily" benefited Railway. Expressio unius est exclusio alterius.

---

[3] ■ The Waiters having secured the award they seek to have enforced in the district court on this contention of "price", cannot mend their hold there and assert to the contrary. Baltimore & O. R. v. Brady, 288 U.S. 448, 458, 53 S.Ct. 441, 77 L.Ed. 888.

Furthermore, it is obvious that a waiter is not "working" for his employer when, on his own time, he eats his meals. If the free meals (part of the "price" paid for his services) is a "working condition," though given when not working, then we have the absurdity that the cash paid is also a working condition. In another sense, the payment of the price to secure a man's working is a *condition* precedent to such working, but it is not a "working condition" in the ensuing employment.

In Anderson v. Mt. Clemens Pottery Co., D.C.Mich., 69 F.Supp. 710, at pages 718, 719, in discussing walking time to and from lunch, in relation to the language of the Supreme Court that walking time was compensable only when it "bore no relation whatever" to the "convenience and necessity" of the employees, and was "pursued necessarily and primarily for the benefit of the employer and his business," the court said, "Can we by any stretch of reasoning say that when an employee eats his lunch he does so 'necessarily and primarily for the benefit of his employer'? We think not. Such reasoning is specious and deceptively beautiful."

**■ B.** *The district court erred in holding that the Waiters have maintained their burden of proof that the meals customarily given them, which they admit are a part of the price the Railway pays for their services, are primarily for the benefit of the Railway.*

**■** The essential factor in the Waiters' burden of proof is that of the several benefits obviously arising from giving of meals to the Waiters, they must aggregate so that it can be said that their giving is "primarily" for the benefit of the Railway. No witness, expert or otherwise, has stated that there is such a *primary* benefit to the Railway.

**■** The court takes judicial notice that the Railway could have (1) collected in cash or charged as a deduction from wages the cost of the meals served the Waiters on the diners, or (2) required the Waiters to bring their own meals, or (3) in the limited period between the service of meals in the dining cars, stopped the passenger trains at stations having restaurants and required the Waiters, without changing their clothes, to leave the train and eat and pay for hurried meals there.

The Railway admits it would inconvenience it so to stop its trains and well might inconvenience it to find a place to store the food for the Waiters' own meals. However, both the inconveniences would be avoided if the Railway, as it well could, required the Waiters to pay for their own meals. With the burden of proof that the conveniences of the free meals were the *primary* purpose, we have the Waiters' contention sustained before the Division that the purpose was to give the meals as a "price * * * to insure the desired service" to the Railway. In this condition of the record we do not agree that the Waiters have sustained their burden. The furnishing of meals on the Waiters' own time is entirely different from furnishing uniforms to them or switching irons to switchmen or ticket punching tools to a conductor, all the latter for use in the railway service in the company's time.

In reaching this conclusion we note that the district court ignores in its findings of fact the Waiters' sustained contention that their employment was induced by this "price" of free meals. It also ignores the decision of the same Division in another case squarely against the Waiters, just succeeding that of the instant decision. Of that succeeding decision the Waiters admit its applicability since, as seen, they contend that the practice of giving free meals is *"notorious, uniform and consistent throughout the entire railroad industry.* It was certainly known among all dining-car managements and workers. It was part of the price these managements were willing to pay to insure the desired service."

Within a month's time after holding in the instant case that it had no power to consider the effect of Section 3(m) of the Act on the Railway's price for the Waiters' services the Division withdrew from its position and assumed jurisdiction. In its opinion and decision in Joint Council of Dining Car Employees v. Chicago, Milwaukee & St. Paul, etc., another large passenger carriage case, that Division, in Award No. 2699, considered and decided the effect on the wage of this admitted "notorious,

uniform and consistent [practice of giving free meals] throughout the entire railroad industry" in the light of Section 3(m) of the Act and the regulations thereunder.

The Waiters here were members of the same labor group involved in the Milwaukee case and made the same contentions here advanced. The "Opinion of the Board" states " * * * It seems clear to us that the parties themselves intended, as demonstrated by their subsequent actions, that the furnishing of meals and sleeping accommodations to employees on duty or deadheading was a part of their pay in excess of the cash wages paid. It is just as much so as if the written agreement, after fixing the wage rate, had included the words 'plus meals when on duty or deadheading.' See Awards Nos. 2436 and 2663. [2663 is the instant Southern Pacific case in which the Board refused to consider the effect of Section 3(m).] Meals and lodging are not gifts or gratuities. If they were they could be taken away by the carrier at will. They must be, therefore, a part of the compensation of the employee entitled to them. * * * For the reasons previously recited, we think that the furnishing of meals continued to be a part of their pay in excess of the cash wages paid."

It then states its final conclusions that "1. Meals and lodging while on duty or deadheading in the interests of the carrier was *a part of wages paid* dining car employees prior to the agreement of July 1, 1936. 2. After July 1, 1936, such meals and lodging *continued* to be a *part* of the wages paid, the agreement being silent with reference thereto and the parties continuing to mutually treat it as such [as part of the contract]. 3. That when the Fair Labor Standards Act became operative upon dining car employees of this character, as to employees affected by the Act, the carrier could properly deduct the actual cost of meals and lodging to the extent of the difference between the negotiated rate of pay and the minimum rate provided by the Act. * * *" [Emphasis supplied.]

Here is a tribunal of which Mr. Justice Rutledge stated in Elgin, J. & E. R. Co. v. Burley, 327 U.S. 661, 664, 665, 66 S.Ct. 721, 722, 90 L.Ed. 928.

"Furthermore, the Board is acquainted with established procedures, customs and usages in the railway labor world. It is the specialized agency selected to adjust these controversies. Its expertise is adapted not only to interpreting a collective bargaining agreement,[5] but also to ascertaining the scope of the collective agent's authority beyond what the Act itself confers, in view of the extent to which this also may be affected by custom and usage.

[5] " * * * The factual question is intricate and technical. An agency [the Board] especially competent and specifically designated to deal with it has been created by Congress.' [Order of Railway Conductors v. Pitney, 326 U.S. 561, 567, 66 S. Ct. 322, 90 L.Ed. 318.]"

An application of this principle is seen in Dobson v. Commissioner, 320 U.S. 489, 502, 64 S.Ct. 239, 247, 88 L.Ed. 248, where the court said: " * * * In deciding law questions courts may properly attach weight to the decision of points of law by an administrative body having special competence to deal with the subject matter. The Tax Court is informed by experience and kept current with tax evolution and needs by the volume and variety of its work. While its decisions may not be binding precedents for courts dealing with similar problems, uniform administration would be promoted by conforming to them where possible."

The district court, ignoring in its opinion the Milwaukee waiters case, states that the "cost of the meals" has "no logical relation in fact to compensation. If not eaten, compensation would not be increased by their cost. Nor, if eaten, should the compensation be reduced." This in the face of the unmentioned holding to the contrary of the "especially competent" agency created by Congress to determine railway customs and usages which stated "Meals and lodging are not gifts or gratuities. If they were they could be taken away by the carrier at will. They must be, therefore, a part of the compensation of the employe entitled to them."

The decision in the Milwaukee waiters case follows Brotherhood of Maintenance, etc. v. Nashville, C. & St. L. Ry., D.C., 56

F.Supp. 559, which had overruled a holding of the Board similar to that in the instant Southern Pacific case. The court there concluded (56 F.Supp. at page 564), "The Court is of the opinion that under the terms of the contract in question, the Railway is obligated to furnish board to said extra gang laborers, and that said board was customarily furnished as part of the basic wage before the passage of the Act and since the passage thereof, and therefore, the Railway is entitled, under the contract in question, and under the terms and provisions of the Act as construed by the Court, to claim an allowance for the reasonable cost of furnishing said board to said laborers; and said cost having been established and determined by the Administrator to amount to more than the difference between 33¢ per hour and 36¢ per hour, the Railway is entirely within its rights in declining to recognize the validity of the award made by the Railroad Adjustment Board in this case, and said award should not be enforced by orders of this Court; and that the bill filed in this case should be dismissed."

In that case the Railway's agreement with the employee was for $2.74 per day "plus board." The phrase "plus board" was not expressly in the agreement in the Milwaukee case. Nevertheless, because free meals were agreed upon, the Division held the meals were "a part of their pay, in excess of the cash wages paid, * * *" just as much so as if the written agreement, after fixing the wage rate, had included the words *"plus meals* when on duty * * *."

This decision of the Nashville case likewise is not considered in the district court's opinion.

In Shelton v. Missouri-Kansas, etc. R. R. Co., D.C.E.D.Mo. 74 F.Supp. 961, 963 that district court held

"These meals which the testimony shows were furnished, and the lodging which was furnished, were not gifts—were not free in the sense that a meal or lodging is furnished a beggar at the door, but were and had been for many years considered as a part of the benefit derived by the plaintiffs from the employment which they were engaged in. Unless the reasonable cost of those benefits are shown to be of such slight value in money that their value added to the cash resulted in wages amounting to less than the statutory minimum of 30 cents per hour, plaintiffs cannot recover."

Although this is what the evidence in the instant case shows and although there is no testimony before it as to the *primary* purpose of the giving of the meals, the court below states it cannot follow the Shelton case "because that cause was decided upon a factual record not disclosed in the decision."

The district court's opinion states "The 'board' referred to in the statute [Section 3(m)] is 'board * * * customarily furnished.' This, in my opinion, implies that the 'board * * * customarily furnished' is a part of the compensation or wages of the employee." That is to say Section 3(m) should read "Wages paid an employee include the reasonable cost of furnishing * * * board * * * if such board is customarily furnished [as wages.]"

Obviously this makes the words "customarily furnished" superfluous. If the board is furnished as wages it is a part of the total of cash and other wage making up the minimum. The effect of such a construction is to make Congress state the absurdity that "board is a part of wages if it is a part of wages," instead of "Board is a part of wages if customarily furnished."

We cannot agree with the Brotherhood, etc. v. Nashville, etc. Ry., D.C.M.D.Tenn., 56 F.Supp. 552, 558, in this respect. As seen, supra, that court's next decision under the same title, where the court construed the phrase "plus board" was held by the Division in the Milwaukee case to require it to hold that the *mere agreement* to furnish the meals meant that the waiters' wage was the cash paid "plus meals when on duty."

Appellant cites a number of income tax cases holding that in certain circumstances the word "income" does not include board furnished an employee. This court has distinguished such cases in Pacific American Fisheries v. United States, 9 Cir., 138 F.2d 464, 465, where we construed the analogous Social Security Act, 42 U.S.C.A. § 1011, which defines wages as including "all remuneration for employment, including the cash value of all remuneration paid in any

medium other than cash." In arguing that the value of the board and lodging thus furnished should *not* be considered part of "wages," as defined in the Social Security Act, the employer cited and relied upon the "benefit and convenience" rule of the income tax cases. This court held that the value of such board and lodging was part of the employee's wages and distinguished the income tax "benefit and convenience" rule, saying in 138 F.2d at page 465, "The application of this [income tax] regulation to the computation of social security tax would be on the presumption that income tax and social security tax are taxes of the same nature. This is not so. Income taxes are revenue, levied to defray the expenses of the government. The Social Security Act, 42 U.S.C.A. § 301 et seq., provides for old age security, unemployment insurance, security for child dependents, etc. It expressly was enacted for the benefit of the payee of wages. *It is possible that what might not be taxable income for income tax purposes might constitute wages under the provisions of the Social Security Act. There are no cases where a similar construction of the term 'wages' as appears in the income tax cases is made in determining wages for Social Security Tax purposes.*" [Emphasis supplied.]

We hold that the meals here agreed to have been customarily furnished are under Section 3(m) of the Act a part of the Waiters' wage or "price" to secure their services which, when added to the cash payments, satisfied the minimum requirements of the Administrator's two wage orders. We further hold that it does not appear that such additional wage or price was paid primarily as a convenience to the Railway.

The judgment of the district court is reversed.

ORR, Circuit Judge (dissenting).

The parties are agreed that the furnishing of meals to the waiters is a matter of contract. The terms of the contract are in dispute. The waiters contend that under the terms thereof free meals were to be furnished them while on itinerant duty as a part of the working conditions. The Board, in making the award, adopted appellee's version of the contract. The interpretation of collective agreements is a matter peculiarly within the province of the Board.[1] The trial Court's finding No. 4 reads: "4. Continuously since the year 1936 there has been in effect between petitioner and respondent an agreement concerning rates of pay, rules and working conditions of said craft or class of dining car waiters, whereby and whereunder as one of said working conditions meals were to be supplied in the dining cars of respondent to the members of said craft or class, without cost or charge to them, while on itinerant duty in said cars in the course of their employment, and primarily for the benefit and convenience of respondent."

This finding supports the judgment and I am unable to say it is clearly erroneous.

I am impressed, as I think the Board and the District Court must have been, by the interpretation appellant put upon its contract with Dining Car Stewards, who bear much the same relation to the Company as the Dining Car Waiters insofar as working conditions are concerned. In a letter written by the auditor of appellant Company to the Railroad Retirement Board, it is stated:

"Meals are furnished to this class of employees only while enroute on dining cars of this company in their capacity of stewards; and as a 'convenience to employer' to avoid necessity of delaying trains at stations enroute, etc. Meals are not furnished at home terminals on days off or while awaiting turn to be sent out as a member of the crew of a dining car.

"These meals are considered reasonable traveling expenses incurred while performing duties for this company. The value of these meals has no relation to the 'compensation' of the employee. There is no differential between employees who on some runs have fewer meals than those on other runs, nor does the employee have the option of added cash 'compensation' if he should choose to take fewer meals."

In my opinion § 3(m) of the Fair Labor Standards Act has no application to a situation such as exists here. The judgment should be affirmed.

---

[1] Washington Terminal Co. v. Boswell, App.D.C., 124 F.2d 235.