CONDADO BEACH HOTEL COMPANY, Petitioner *v.* MINIMUM WAGE BOARD, Respondent.

No. 109. Argued March 3, 1953.—Decided April 22, 1953.

Luis F. Sánchez Vilella, Sarah Torres Peralta and C. Morales, Jr., for petitioner. J. Gallart Mendía and Domingo Candelario for respondent.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

The petitioner, Condado Beach Hotel Co., has challenged in this Court, by means of a writ of review, the validity of Decree No. 22, promulgated by the Minimum Wage Board on August 6, 1952, concerning the hotel business. The following errors are assigned:

"1. The classification of hotels established in Article IV (A) and (B) violates the provisions of § 12 of the Minimum Wage Act because it grants competitive advantages to certain categories of hotels over other categories and, in addition, the determinations of fact underlying the classification of the various hotels in several categories is not supported by substantial evidence. The establishment of two categories of hotels with different minimum wages based on the fact that a number of hotels has a casino operated either by the employer himself or by different employers, finds no support whatsoever on the proved facts before the Board and, furthermore, violates the provisions of §§ 1, 8 and 12 of the Minimum Wage Act. (Par. V (A) (I), pp. 2 and 3, Writ of Review.)

"II. The classification of employees into two categories, that is, those who in the course of their employment regularly receive tips from guests and those who do not receive tips, established for hotels in Class 'A' (hotels having a casino or gambling rooms operated either by the employer himself or by different employers) was not established for all the other hotels included in Class 'B' and the Board thereby violated the provisions of §§ 1, 8 and 12 of the Minimum Wage Act and established a distinction, which is not only arbitrary and unconstitutional, but illegal as well, for it does not meet the ends provided by

the first Section of the Minimum Wage Act and, moreover, grants competitive advantages to a category of hotels over another. (P. 2, Writ of Review.)

"III. The definition of employees belonging to the category of employees receiving tips from guests regularly in the course of their employment is not supported by substantial evidence and is arbitrary since the evidence showed that besides waiters, bus-boys, bartenders, maids and bellboys, other kinds of employees receive tips regularly in the course of their employment. (Pp. 3 and 4 of the Writ of Review.)

"IV. The wages fixed for hotels in the first zone in category 'A' violate the provisions of the Minimum Wage Act to the effect that in fixing minimum wages the Board shall take into consideration the cost of living and the need of the workmen and the highest wage that can reasonably be paid by the industry provided it does not bring about a substantial decrease in employment and, in addition, violate the public policy established by the Minimum Wage Act to the effect that the Board must see to it that it does not destroy the sources of employment and of work and must fix wages taking into consideration the costs, the financial condition of the industry and existing special conditions guaranteeing its financial stability and natural expansion. (Par. 5(A) (IV) p. 4, Writ of Review.)

"V. The Board erred, furthermore, in promulgating a minimum wage of 36¢ for employees receiving tips in the first zone of classificaion 'A' since such employees receive a substantial weekly amount in tips sufficient to cover their living needs and the Board, ignoring this fact, acted illegally, against the evidence presented and did not take into consideration the requirements established by § 12 of the Minimum Wage Act. (Par. 5(A) (V), p. 4, Writ of Review.)

"VI. The Board erred, furthermore, in establishing excessively high wages because the cumulative effect of such wages added to the other financial burdens imposed by the Decree through the guarantee of a weekly minimum wage, vacations with cumulative pay, limited deductions for services rendered, sick leave, etc., would affect the financial stability of the hotel business. (Par. 5(A) (VI), p. 4, Writ of Review.)

"VII. The Board erred in imposing a condition demanding the employers classified in Group A of Article 4 of the Mandatory Decree, regarding bus-boys and maids, to prove under the employee's signature or in any other authentic manner that the

employee has received the amount of $1.60 weekly in tips, because said condition finds no support on any evidence before the Board and imposes on the employer obligations and duties with which it is impossible to comply. (Par. 5(A) (VII), pp. 4 and 5 of the Writ of Review.)

"VIII. The Board erred in approving Article V regarding the guarantee of a weekly minimum compensation because the Board has no legal authority to provide for such guarantee because such provision violates petitioner's constitutional rights and, moreover, because as drawn up, it violates §§ 1, 8 and 12 of the Minimum Wage Act. (Par. B–1, II, III, p. 5 of the Writ of Review.)

"IX. The Board erred in fixing, without any evidence to support it, deductions for services rendered in Article VI of Mandatory Decree No. 22, the amount of which is much less than the actual cost of said services, thereby invalidating the provision for the reason that it is unreasonable, illegal and deprives the petitioner of its property without due process of law. (Par. C. p. 5, Writ of Review.)

"X. The Board abused its power to fix vacations with pay as a working condition. Having fixed 15.208 days per year as vacations with pay as well as sick leave with pay for a like period in such a manner that this leave is equivalent to an additional vacation period, the Board has established, because it is unreasonable and arbitrary, an illegal and unconstitutional provision. (Par. D, p. 6, Writ of Review.)

"XI. The Board erred in approving paragraph C of Article VIII of Mandatory Decree No. 22 regarding sick leave, without excluding the instances where the absence on account of sickness is due to the employee's fault. (Par. E–1, II, p. 6, Writ of Review.)

"XII. Paragraph A of Article X of Mandatory Decree No. 22 is invalid and illegal because it is in contravention of the provisions of the second paragraph of § 15 of the Minimum Wage Act of Puerto Rico since, as drawn up, it obliges the employer to furnish everlastingly certain services to the employees. (Par. F, p. 7, Writ of Review.)"

We discussed most of those errors in *Hilton Hotels* v. *Wage Board, ante,* p. 628. We refer to the opinion delivered in said case. However, certain new questions hereinafter discussed, are raised in this appeal.

 The petitioner alleges that application of Decree No. 22, in all its parts, is confiscatory as to it, Condado Beach Hotel Co., since it implies that the petitioner shall not receive a reasonable profits margin. Its contention is based on a certain number of payrolls submitted to us after the petition for review had been filed in this Court in connection with the fixing of the proper bond. When minimum wages are fixed for an industry, the industry in general, not the economic condition of a particular enterprise, is taken into consideration. *American R. R. Co.* v. *Minimum Wage Board*, 68 P. R. R. 736, 743. Regardless of such rule, the payrolls on which the petitioner bases its contention have been submitted for the first time to this Court, in a collateral manner, and were not submitted in evidence to the Board. They do not form part of the record of the evidence presented before the Board. Without taking into consideration the technical rules of law, the existence of an orderly administrative and judicial system implies that where an industry or business in general considers that a decree is confiscatory and deprives it of a reasonable benefit, such business or industry should submit its evidence and relevant data to the Board, in the first instance, and not to this Court by way of review, in order that the Board may weigh such evidence and data and take whatever measures are pertinent.

The evidence presented in this case proved that the petitioner is not the owner of the casino and the gambling room situated in the Hotel Condado. Another independent entity is the owner. If the test utilized by the Board had been that of financial benefits directly derived from the very operation of the casino, the petitioner would be right in challenging the classification as to it, which receives no direct financial benefits from the casino. But the Board utilized another test, which we have considered rational, in the case of *Hilton Hotels*, to the effect that the establishment of a separate classification as to hotels with a casino is based, not on the benefits of the casino itself, but on the fact that the existence

of the casino implies a greater tourist and guest business in the hotel, and a greater financial activity in the hotel in general. That is, the petitioner herein would obtain greater indirect benefits strictly because there is a casino in the hotel.

■■ The ninth error assigned by the petitioner involves its allegation to the effect that the Board erred in fixing, without any evidence whatsoever supporting it, deductions for services rendered, in Article VI of the Decree, the amount of which, petitioner claims, is much less than the actual cost of such services, "thereby invalidating the provision as unreasonable, illegal and because it deprives the petitioner of its property without due process of law."

Subdivisions A and C of Article VI of the Decree provides as follows:

"A.—To every employee who is furnished breakfast, lunch, dinner, or dormitory there may be deducted from his weekly salary for each such service received by him, a sum not greater than the one specified below:

(1) For each breakfast.................. 10 cents
(2) For each lunch ..................... 25 cents
(3) For each dinner .................... 25 cents
(4) For dormitory ..................... 15 cents a day

"C. —No employee shall be under the obligation to accept, neither shall any employer be bound to furnish, either in whole or in part, the services enumerated in Clause A of this Article."

Section 12 of the Minimum Wage Act provides in part that, except as otherwise provided in a decree, no employer may collect or deduct any amount whatsoever from the wages of a laborer for meals or services furnished in the course or duration of employment, whether by the employer himself or by another person or entity. Section 30 defines "wage" as including compensation of any kind, whether in money or in facilities or services or a combination of any of them, "but it shall include money only in the case of the minimum wage prescribed under the provisions of this Act, unless the board, by decree or regulation, shall otherwise provide or authorize."

Under the foregoing provisions, as a general rule, an employer may not deduct from the wages of his employees the meals furnished them, but a decree may authorize him to do so. Furthermore, such meals may be considered as a part of the wages, if a decree thus provides. Evidently, the legislative purpose is to prevent indirect evasions from the obligation to pay minimum wages by means of artificial deductions of financial value regarding services and meals. Such dilemma may be settled by adequate regulations and decrees permitting such deductions on the basis of the reasonable cost of such services and meals.[1]

As noted, the Decree allows deductions for meals and assigns certain maximum limits concerning the financial value of such deductions. Those values correspond to a fixing of the cost, for employers, of such meals. But the record and the Decree disclose that the Board applied to hotels, in such concept, certain statistics as to the cost of meals in hospitals, in the year 1952. There was no evidence whatsoever as to the cost of meals in hotels. It might be possible that the cost of meals for hospitals corresponds to the cost of meals for hotels. But this is hypothetical. Other factors determining certain differences in both situations may possibly exist also. At any rate, there is no rational basis whatsoever to apply to hotels data that may be true as to hospitals, but not as to

---

[1] Precisely, §3 (*m*) of the Federal Fair Labor Standards Act determines that the term "wage" includes the reasonable cost, as determined by the Administrator, of board, lodging and other facilities, if such facilities have been customarily furnished to the employees by the employer. The reasonable cost of meals is a part of the wages, under that Act. *Southern Pac. Co.* v. *Joint Council Dining Car Employees*, 165 F. 2d 26; *Walling* v. *Alaska Pacific Consol. Min. Co.*, 152 F. 2d 812; *Williams* v. *Terminal Co.*, 315 U. S. 386. Wages may be paid in money and in meals. *Shelton* v. *Missouri-Kansas-Texas R. Co.*, 74 F. Supp. 961. The provision to the effect that wages may include the reasonable cost of meals is permissible, and not mandatory, regarding the employer, but if the employer decides to deduct the cost of the meals, such cost must be reasonable, as determined by the Administrator, and until the Administrator fixes such cost, the employer must pay the wages in money. *Morgan* v. *Atlantic Coast Line R. Co.*, 32 F. Supp. 617.

hotels. Therefore, we are compelled to hold that the fixing of the reasonable cost of meals as the maximum limit of deductions from wages is not supported by any adequate and reasonable evidence, and is arbitrary.

The Board nevertheless alleges that even assuming that the actual cost of meals were higher for the petitioner than that fixed in the Decree, that would not imply the invalidity of such provision, since petitioner's financial condition is not affected. The Board expressly determined (Appendixes 1 and 2 of the Decree, *et seq.*, especially No. 2 as to the petitioner in particular), that in deducting the cost of the meals from the minimum wage previously fixed (36 and 40 cents), the remainder appeared to be, substantially and barring other irrelevant factors, the financial impact of the Decree on the petitioner as to its total expenditures thereunder. It is alleged that if a greater deduction were allowed, because the cost of meals was higher than that fixed in the Decree, it implies that petitioner's expenditures would be even lower, the remainder being less than the amount the petitioner may claim as expenses, there being then the opportunity of increasing the wages in money even more, in harmony with the increase in the cost of the meals, in order that the employer may be in the same previous condition as to the total expenses he may reasonable defray.[2] But, anyhow, should the cost of the meals be higher than that fixed in the Decree, and in the absence of a total readjustment, the employer

---

[2] An example on the basis of arbitrary numbers would illustrate the situation. Assuming that an employee's minimum wage amounts to $19 per week and that the Decree fixes the cost of meals at $5, upon deducting said cost from the wage, the "true" wage remainder would be $14. The Board determined, using these numbers, for example, that the petitioner could pay $14 weekly and at the same time receive a reasonable benefit. If in fact the cost of the meals is $2 more and a $7 deduction were, therefore, permitted, the employer would be paying a total amount of $12 weekly, when it could pay $14. This would mean that the $19 wage could be increased to $21, and the deductions to $7, and the remainder would be the same, $14, in accordance with the financial capacity of the enterprise. But in the absence of such readjustment, the petitioner would be assuming the burden of the $2 excess in the cost of the meals.

would be compelled to assume the burden of the cost in excess of the meals, without there being any way to determine to how much said excess amounts. Be it as it may, the Board did not utilize a rational basis for its determination.[3]

■ The Board states that the petitioner may not challenge the provision regarding deductions for meals since Article VI C of the Decree establishes that no employee shall be obliged to accept, nor an employer to furnish, in whole or in part, the meals and lodging mentioned in Article VI A, and that since said Article VI A is not binding on employers, they may not challenge its validity. Anyhow, the employer is given the alternative to deduct meals and lodging at a certain cost, which alternative is unreasonable and arbitrary and should therefore be eliminated from the Decree or modified by the Board with the proper readjustments as to wages. Taken as a whole, subdivisions A and C of the Decree determine that the employer is not obliged to furnish meals and lodging, but, if he does furnish them, he must do it on the basis of the cost rates fixed in subdivision A. These cost rates do not have a rational basis in the evidence and, therefore, the alternative established in subdivision A should not prevail and should not remain in the Decree. It entails, of course, the invalidity of subdivision B of Article VI, which complements subdivision A, and of subdivision C, because there is no need therefor since it leaves the employer free to comply with subdivision A or not.

■ In spite of that, the fact that Article VI of the Decree is null and void does not involve the nullity of the entire Decree or its other provisions. Subdivisions F of Article X of the Decree provides that the fact that part of the Decree

---

[3] In regard to vacations and sick leave, the Board adopted an objective and exact view as to the financial impact to pay certain wages during a certain number of days and weeks. Incidentally, in *Escudero* v. *Minimum Wage Board*, 66 P.R.R. 561, it was held that certain quantities of milk were deductible from wages. But there was exact proof as to the actual price of the milk, while in the case at bar there is no exact proof as to the actual cost of meals in hotels.

is invalid does not mean that the remainder is invalid also. The provision as to deductions for meals and lodgings is severable from the other parts of the Decree, and the other parts are neither dependent upon nor interlaced with the provision we are setting aside. For example, the provision as to the minimum wage itself (36 and 40 cents per hour as to the petitioner) remains in force, without the petitioner being able to make any sort of deduction from that wage for meals and lodging, pursuant to § 12 of the Act. Now, in setting aside Article VI of the Decree, we think it would be advisable for the Board to make a survey as to the cost of meals and lodging in hotels and determine a system of deductions based on reasonable costs with the proper readjustments in wages pursuant to the financial condition of the hotels, in order to safeguard properly the rights of workmen and of employers.

■ The twelfth error assigned by the petitioner is the following:

"XII. Paragraph A of Article X of Mandatory Decree No. 22 is invalid and illegal because it is in contravention of the provisions of the second paragraph of § 15 of the Minimum Wage Act of Puerto Rico since, as drawn up, it compels employers to furnish everlastingly certain services to employees. Par. F, p. 7, Writ of Review.)"

Paragraph A of Article X of the Decree reads thus:

"Those employees who on the date of the approval of this decree are receiving more than the pertinent minimum wage herein fixed shall not suffer any wage cut whatsoever by reason of such approval. Neither shall any employer take or deduct any sum whatsoever from the wages of any employee for any services received by the employee on that date which are additional to those stipulated under Article VI hereof, nor shall such employer cease furnishing such services in like manner because of the approval of this decree."

Section 15 of the Minimum Wage Act provides that no reduction shall be made in the wages received by virtue of

collective agreements, arbitration awards or any other labor contracts in force.

As to that part of Article X that refers to services, the provision to the effect that no employer may collect or deduct any amount whatsoever from the wages of any employee for any services in addition to those set forth in Article VI, even after the invalidity of Article VI, § 12 of the basic Act, which prohibits such deductions except as authorized by the Board, still stands. Therefore, the portion of Article X of the Decree in question is congruent with § 12. As to services furnished prior to the Decree, that Article should be construed so that its application is limited to services furnished under a labor contract in force, in accordance with the terms of such contract.

For the foregoing reasons Article VI of Mandatory Decree No. 22, approved on August 6, 1952, will be set aside and all other provisions of said Decree will be declared valid.